Filed 5/2/13  In re Brooklyn L. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BROOKLYN L., a Person Coming Under the Juvenile Court Law. | B243780 |
| | (Los Angeles County Super. Ct. No. CK93542) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| JULIO L., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Donna Levin, Juvenile Court Referee.  Affirmed as modified.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel for Plaintiff and Respondent.

Appellant Julio L. (father) appeals from the juvenile court's jurisdictional and dispositional orders establishing dependency jurisdiction over his daughter Brooklyn (born May 2010) and placing her in foster care. Father contends substantial evidence does not support the juvenile court's jurisdictional findings under Welfare and Institutions Code section 300, subdivision (b)[1], that father hit mother in Brooklyn's presence or that past instances of domestic violence placed Brooklyn at current substantial risk of harm. Father further contends the juvenile court abused its discretion by not placing Brooklyn in his care or by according him unmonitored visitation. We affirm the juvenile court's jurisdictional and dispositional orders but remand the matter to the juvenile court with directions to amend count b-2 in the section 300 petition to conform to proof, as set forth in our disposition, *infra.*

## BACKGROUND

**Detention and section 300 petition**

On May 18, 2012, the Los Angeles County Department of Children and Family Services (the Department) filed a section 300 petition on behalf of two-year-old Brooklyn, alleging that her mother Kayleigh W. (mother)[2] left the child with unrelated caretakers without providing for Brooklyn's ongoing care and supervision. Both parents' whereabouts were unknown.

The Department's social worker spoke with mother's former foster mother, Robin S., and Robin's daughter Samantha, with whom mother had left Brooklyn. Robin reported that when mother was a child, she had been placed as a foster child with Robin's family and that mother had maintained contact with them throughout the years. Samantha identified father as Brooklyn's father and reported that mother had moved out of father's home in March 2011 because of domestic violence.

The social worker also spoke with maternal cousin Heather W., who said that mother had lived in her home before moving in with Robin and her family in March

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

2

2012.  Heather claimed to have helped mother move out of father's home because of domestic violence issues.  During the move, Heather packed a folder containing printed email messages that she believed belonged to mother but later learned belonged to father.  The folder contained emails purportedly sent by father to mother threatening to kill her and Brooklyn.  Heather agreed to provide the social worker with copies of the emails.

Father did not appear at the initial detention hearing on May 18, 2012, when the juvenile court ordered Brooklyn detained.  On June 5, 2012, the Department filed an amended section 300 petition that added the allegation that mother and father had a history of engaging in domestic violence in Brooklyn's presence, that on several occasions father hit mother in the face, and that mother failed to protect Brooklyn by allowing father to live in the same home.

**Jurisdiction/disposition**

In its June 19, 2012 jurisdiction/disposition report, the Department reported that father's whereabouts remained unknown.  Father had a criminal history that included a September 2011 felony conviction for assault likely to result in great bodily injury, for which father was placed on probation for five years, as well as a juvenile arrest for sending a threatening email to mother.

In an interview with the social worker, mother said she and father had lived together for three years.  She said father was physically abusive to her and "would hit me in the face a lot . . . [w]ith his hands."  The abuse stopped while mother was pregnant with Brooklyn but resumed when the child was eight or ten months old.  According to mother, father did not hit her in Brooklyn's presence.  "She was not present when it (physical abuse) happened.  It would happen while we were in the car.  It was never when she was there with us."  Mother stated that father was not in a gang but "had a lot of anger issues."  "He would hit me after work.  He would get mad at me."  When asked if father had ever threatened to harm her or Brooklyn, mother said, "He hasn't threatened me lately, no.  He has threatened me in the past, I believe, over Facebook or Myspace.  There was an email that he wrote to me and I wrote back to him.  That's the only threat he made. . . .  I don't know if he (father) is still a danger, but when I was with him, he

3

would get angry with me." When the social worker asked mother if she had any concerns about father she responded, "I'd like to say no, but I don't know."

In a separate interview, Samantha reported that since leaving the S. home, mother had resumed interacting with father. "Which concerns me because I have seen marks on her (mother's) body. He (father) has been abusive with her, and I've seen bruises on her body from him, especially for Brooklyn's sake because I don't know what he's capable of. . . . He (father) would hit her (mother) in front of his family. [Father's] family saw him hit her, and his mom didn't do anything. And she (paternal grandmother) always had [father's] back, and anything [he] did was never wrong."

The Department located father after a due diligence search. Father filed a statement regarding paternity on June 19, 2012, declaring he was Brooklyn's father, had taken care of her, had been denied contact with her for the past year after mother left his home, and had he known the child's whereabouts, he would have retrieved her and taken care of her. Father denied any history of domestic violence or sending threatening emails.

At a June 19, 2012 hearing, father denied the allegations of the amended petition. The juvenile court found father to be Brooklyn's presumed father, continued the matter, and ordered weekly monitored visits for father.

The Department arranged for a family evaluation by a Multidisciplinary Assessment Team (MAT) on June 25, 2012. The MAT assessor was unable to contact either parent to attend the assessment meeting. In addition, neither parent had scheduled a visit with Brooklyn.

The MAT assessment report was based primarily on interviews with Samantha. According to Samantha, mother and Brooklyn had initially lived with father in the paternal grandparents' home. Samantha said that mother left the home and went to live with a maternal cousin because violence was occurring between mother and father in Brooklyn's presence. Mother and Brooklyn then moved to the home of mother's former foster parents and their daughter, Samantha, in March 2012. Mother subsequently left the S. family home without taking Brooklyn.

4

**Adjudication hearing**

A combined jurisdiction/disposition hearing was held on July 18 and July 20, 2012, at which the juvenile court received the Department's reports in evidence[3] and heard testimony. Father testified that he and mother ended their relationship in March 2011 and had not spoken since then. He denied engaging in any violence with mother, denied ever making threats against mother or Brooklyn, and denied sending any email messages to mother in the past year and a half. He admitted there was a computer in his home but said he used it only for online homework and research. He denied having a Myspace, Facebook, or email account, and denied knowing anything about email in general. He testified that he did not remember whether he was arrested for making criminal threats in February 2010. Father admitted to being on probation for five years for committing an assault against his uncle, resulting in the uncle's hospitalization.

Father's aunt, Maria D., testified that father and mother lived in her home for six months between July 2010 and January 2011. During that time, there were no incidents of violence. Maria denied that father had any issues with anger and confirmed that father used the computer only to do his homework. Maria explained that father's conviction for assault resulted from an act of self defense against an uncle. Brooklyn was not present during the incident.

Although mother had been present at the outset of the hearing, she left the courthouse and failed to reappear after a morning recess. The matter was continued to July 20, 2012, and mother failed to appear at the continued hearing.

After hearing argument from the parties, the juvenile court found that father's testimony was not credible and that father had an "anger issue": "[Father] just didn't convince me at all about anything he testified to. He was evasive and he was perspiring while he was testifying." "[I]t is clear that father has an anger issue. He has been convicted of an assault. There's been other arrests that involved, I believe, at least assault or battery. . . . I think the father does have an issue with anger and I do believe that he

---

[3]     The MAT report was received in evidence for the disposition hearing only.

has hit the mother. And I do believe that the child was there when he hit the mother." The juvenile court then found mother's statements to be credible, but confused her statements with those given to the MAT assessors by Samantha, who stated that violence between the parents occurred while Brooklyn was present:[4] "I think the mother was truthful about that [domestic violence in Brooklyn's presence]. She didn't say it in a way that was exaggerated or that she was out to get the father by saying it. So I do believe that." The court ordered that Brooklyn remain suitably placed and accorded monitored visits for both parents.

Father filed a notice of appeal on August 23, 2012, appealing from the following findings and orders: "On 7/18/12 the court sustained B-1 and B2 Allegations under WIC 300."

## DISCUSSION

### I. Standard of review

We review the juvenile's court's jurisdictional findings under the substantial evidence standard. (*In re David M.* (2005) 134 Cal.App.4th 822, 829; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193 (*Heather A.*).) Under this standard, we review the record in the light most favorable to the juvenile court's determinations to determine whether there is any reasonable, credible, and solid evidence to support the juvenile court's conclusions, resolve all conflicts in the evidence, and make all reasonable inferences from the evidence in support of the court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) We review the juvenile court's dispositional orders for abuse of discretion. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

### II. Jurisdiction

Father challenges juvenile court's jurisdictional findings regarding domestic violence under section 300, subdivision (b) based on insufficiency of the evidence. The Department contends the appeal should be dismissed for lack of jurisdiction because father's notice of appeal refers to only the first of the two combined

---

[4]    As discussed, the juvenile court admitted the MAT report for purposes of the dispositional hearing only.

jurisdiction/disposition hearings -- the one held on July 18, 2012, at which the juvenile court received evidence -- rather than the July 20, 2012 hearing at which the juvenile court made its findings and orders. California Rules of Court, rule 8.100(a)(2) provides that a notice of appeal must be liberally construed in favor of its sufficiency, and it is evident that father intended to appeal the juvenile court's jurisdictional findings and dispositional order.

The Department further contends we need not address father's sufficiency argument based on count b-2 of the section 300 petition because jurisdiction over Brooklyn exists based on mother's conduct alone. In support of its position, the Department cites *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 and other cases for the proposition that a reviewing court can affirm the juvenile court's finding of jurisdiction over a child if any one of the statutory bases enumerated in the petition is supported by substantial evidence. In the instant case, because count b-2 is the only allegation in the petition that involves father, we are not persuaded by the Department's argument that we should refrain from addressing the merits of father's appeal.

The gravamen of father's jurisdictional argument is that the evidence of domestic violence does not support jurisdiction because there was no showing that Brooklyn was at substantial risk of serious harm from that violence. The argument is two-fold. Father first contends there was no evidence to support the finding in count b-2 of the petition that he and mother "have a history of engaging in violent altercations *in the presence of the child*" (italics added) because the evidence before the juvenile court at the jurisdictional hearing showed that domestic violence occurred only when Brooklyn was not present. Father further contends the juvenile court's exercise of jurisdiction was improper because the evidence concerned past conduct only and there was no evidence that circumstances at the time of the jurisdictional hearing subjected Brooklyn to any risk of harm. We address the latter of these two arguments first.

### A. *Substantial evidence supports jurisdiction based on father's violent conduct*

Father cites *In re Rocco M.* (1991) 1 Cal.App.4th 814 (*Rocco M.*), *In re Daisy H.* (2011) 192 Cal.App.4th 713 (*Daisy H.*), *In re Janet T.* (2001) 93 Cal.App.4th 377, and *In*

7

*re Steve W.* (1990) 217 Cal.App.3d 10 (*Steve W.*) as support for his argument that in cases involving domestic violence, "[p]hysical violence between a child's parents may support the exercise of jurisdiction under [section 300] subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm. [Citations.]" (*Daisy H., supra*, at p. 717.) While it is the circumstances at the time of hearing that determine jurisdiction, these cases do not hold that past conduct is irrelevant to that determination. "[E]vidence of past conduct may be probative of current conditions." (*Rocco M., supra*, at p. 824.)

We conclude that the evidence here, including father's past violent conduct, was sufficient to support the juvenile court's finding that, at the time of the jurisdiction hearing, there was a substantial risk that father's violent conduct would continue in the future and subject Brooklyn to harm. There is substantial evidence that father had significant anger management problems and an unresolved history of domestic violence with mother. Mother told the Department's social worker that father had "a lot of anger issues" and would hit her in the face "a lot." Although father refrained from hitting mother during her pregnancy, his physical abuse of mother resumed when Brooklyn was only eight or nine months old. There is no evidence that father's domestic violence and anger management issues were ever resolved. To the contrary, there was evidence that the abuse continued after mother had moved out of father's home and the amended section 300 petition had been filed. Samantha reported in June 2012 -- one month before the adjudication hearing -- that mother had been seeing father and that Samantha had observed bruises and marks on mother's body since the relationship with father had resumed.

The facts of the instant case are distinguishable from those in *Steve W.*, on which father relies. In *Steve W.*, it was undisputed that the mother no longer had any contact with an abusive companion who had killed the subject minor's sibling, and the juvenile court removed the minor from the mother's custody on the ground that the mother had a history of entering into abusive relationships. The appellate court reversed, emphasizing

8

that "speculation about the mother's possible future conduct" was not sufficient to support a finding of dependency. (*Steve W., supra*, 217 Cal.App.3d at p. 22.) Here, in contrast, there was evidence of father's continuing physical abuse of mother one month before the adjudication hearing.

Moreover, unlike in *Rocco M.*, in which the appellate court found that the past conduct was not repetitive or foreseeable, here the past conduct reflected father's anger management issues that were likely to be repeated in the future unless addressed. Mother stated that father hit her "a lot" during the three years she lived with him, that the physical abuse abated only during the period between her pregnancy and the first eight months of Brooklyn's life, and resumed thereafter.

There was also evidence that father was prone to violence in his relationships with others. His criminal history includes a 2011 conviction for assault likely to result in great bodily injury against another family member, as well as arrests for battery and for making criminal threats. Father's testimony, which the juvenile court found not credible, reflected a complete denial of his violent conduct.

That father's physical abuse of mother occurred only when Brooklyn was not present does not preclude dependency jurisdiction premised on domestic violence. The domestic violence occurred while father, mother, and Brooklyn lived together. "[D]omestic violence in the same household where children are living *is* neglect; it is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it. Such neglect *causes* the risk." (*Heather A., supra*, 52 Cal.App.4th at p. 194, original italics; see also *In re Jon N.* (1986) 179 Cal.App.3d 156, 161.) Given the recurring nature of father's violent conduct, the juvenile court could reasonably conclude that Brooklyn was at risk for exposure to domestic violence or other harm. (*In re E.B.* (2010) 184 Cal.App.4th 568, 576; *Heather A., supra*, at pp. 195-196.)

Brooklyn's young age is also a significant factor in this case. Brooklyn was an infant when father's physical abuse of mother resumed, and only two years old at the

time of the jurisdiction hearing. Her very young age made her particularly vulnerable to father's violent outbursts.

The petition was based, not on a single unforeseeable incident that was not likely to recur, but on an ongoing course of violent conduct by father toward mother and others. Father's violent conduct, which continued even after the Department's intervention, coupled with his failure to acknowledge or to take responsibility for that conduct, justified the juvenile court's conclusion that Brooklyn was at risk of harm.

### B. *The petition should be amended to conform to proof*

Father contends the evidence does not support the juvenile court's finding in count b-2 of the amended section 300 petition that he and mother "have a history of engaging in violent altercations in the presence of the child." The Department concedes that no evidence was presented at the jurisdiction hearing of domestic violence between the parents in Brooklyn's presence[5] but argues that count b-2 can be amended to conform to proof by deleting the language "in the presence of the child."

A juvenile court may amend a dependency petition to conform to the evidence received at the jurisdiction hearing in order to remedy immaterial variances between the petition and proof. (§ 348; Code Civ. Proc., § 470.) "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code Civ. Proc., § 469.)

"[T]he ability to amend according to proof plays an important role in the overall dependency scheme. If a variance between pleading and proof -- to use the traditional term of art from the civil law [citation] -- is so wide that it would, in effect, violate due process to allow the amendment, the court should, of course, refuse any such amendment. [¶] The basic rule from civil law, however, is that amendments to conform to proof are favored, and should not be denied unless the pleading as drafted prior to the proposed

---

**5** As discussed, Samantha's statement to the MAT assessors that father hit mother in Brooklyn's presence was admitted for purposes of disposition only.

10

amendment would have misled the adversarial party to its prejudice. [Citation.]" (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1041-1042, fn. omitted.)

Here, the gravamen of the allegations in count b-2 of the amended section 300 petition concerned recurring domestic violence between the parents. Father does not contend he was misled to his prejudice because the petition further alleged that such domestic violence occurred in Brooklyn's presence. There was substantial evidence of domestic violence between father and mother in this case. Given these circumstances, amending the petition to conform to the evidence is appropriate, and we remand the matter to the juvenile court to enter a finding under section 300, subdivision (b), to conform to proof.

## III. Dispositional order

Section 361 authorizes the removal of a child from a parent's physical custody if the juvenile court finds that a substantial danger exists to the child's physical or emotional well-being: "A dependent child may not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . custody. (§ 361, subd. (c)(1).)

Substantial evidence supports the juvenile court's dispositional findings in this case. There was evidence at the disposition hearing of domestic violence between father and mother in Brooklyn's presence. That evidence, together with evidence of father's recurring violent conduct toward mother and others and his complete denial of any domestic violence, is sufficient to support the juvenile court's finding that removing Brooklyn from father's care was necessary to protect her from substantial risk of physical or emotional damage. The juvenile court's removal order accordingly was not an abuse of discretion.

11

**IV. Visitation**

Father challenges the juvenile court's order for monitored visitation, arguing that his visits with Brooklyn should be unmonitored. An order setting visitation terms is reviewed for abuse of discretion. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.) An abuse of discretion does not occur unless the juvenile court "'"""has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination."'"'" [Citation.]" (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.) A visitation order may not jeopardize the safety of the child. (§ 362.1, subd. (a)(1)(B).)

The record shows that after mother left father's home, father had no contact with Brooklyn for a year. At the time of the adjudication hearing, father had visited with Brooklyn only three times. In light of Brooklyn's young age, the limited contact between Brooklyn and father for more than a year, and father's history of violent behavior, the order for monitored visitation was not an abuse of discretion. We therefore affirm the order.

The juvenile court's order does not bar father from seeking more liberalized visitation in the future. If the circumstances that caused the juvenile court to order monitored visitation change, father may seek to modify that order.

12

## DISPOSITION

The juvenile court's dispositional order removing Brooklyn from father's custody is affirmed, as is the order according father monitored visitation.  We remand the matter to the juvenile court to modify the jurisdictional finding under section 300, subdivision (b), in count b-2 of the petition to delete from the petition the language "in the presence of the child."  As modified, the juvenile court's order establishing jurisdiction over Brooklyn is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

13