113 Cal.Rptr.2d 163 (2001)
93 Cal.App.4th 377
In re JANET T. et al., Persons Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Tricia T., Defendant and Appellant.
No. B147625.
Court of Appeal, Second District, Division Seven.
October 29, 2001.
*164 John L. Dodd, under appointment by the Court of Appeal, Tustin, for Defendant and Appellant.
Lloyd W. Pellman, County Counsel, and Jacklyn K. Louie, Deputy County Counsel, for Plaintiff and Respondent.
JOHNSON, J.
In this juvenile dependency proceeding, we conclude the sustained allegations of the petition are insufficient to establish juvenile court jurisdiction. Accordingly, we reverse the court's jurisdiction and disposition orders and remand the matter to the juvenile court.

*165 FACTS AND PROCEEDINGS BELOW
Appellant Tricia T. is the mother of six children. Two of mother's children are adults and live independently from mother. Four of mother's children are minors. When detained, Janet T. was 14 years old, Donald T. was 12 years old, Dorothy was four years old, and Tercel T. was then two years old. Donald T., Sr., who lives in the State of Washington, is Janet and Donald's father. Tercel T., Sr., who lives in San Diego, is Dorothy and Tercel Jr.'s father.
In early June 2000 mother moved with the children from San Diego to Pasadena to be near her adult son and his family. On June 7, 2000, mother and her four minor children took up residence at the Union Station shelter in Pasadena. A week later the shelter made a referral to the Los Angeles County Department of Children and Family Services (DCFS) regarding mother and her children. The shelter's referral alleged mother was "neglecting her children by not watching them and failing to meet their medical needs. The two youngest children, Tercel 2 and Dorothy 4 had head lice and Donald 12, appeared to be very depressed." The two older children, Janet and Donald, informed the shelter's counselor they had not attended school for several months.
A social worker interviewed mother shortly thereafter. Mother stated she and the children had been in numerous shelters since October 1999 when she was evicted from her apartment in San Diego. In March 2000 mother and the children moved in with an acquaintance. She left the residence when she discovered her daughter Dorothy had been molested by the acquaintance's two young sons. Mother also informed the social worker San Diego Children's Services had removed Tercel Jr. for failure to thrive. He was returned to mother's care four months later in April 1998.
The DCFS offered mother family preservation and voluntary family maintenance services. Mother appeared interested in receiving those services. However, she and her children left the Union Station shelter without informing the DCFS of her new location.
The DCFS in the meantime received information concerning mother's history with San Diego Children's Services. A psychiatric evaluation report dated February 15, 1999, indicated mother suffered from schizoaffective disorder, bipolar type. According to this report, mother had been "rescued" in her efforts to take care of her children by the intervention of social services. The evaluator considered mother's situation "quite precarious in terms of uncertainty about her decision making and ability to consistently attend to [the] responsibility of caring for her children." The doctor suggested mother take medications to stabilize her moods and behavior.
Between March 30 and May 24, 2000, there were six referrals to San Diego Children's Services regarding mother and her children, involving: the allegation Dorothy had been molested; an allegation by Burger King employees they saw mother holding her two youngest children off the ground by their hair; a shelter's allegation of severe neglect because Dorothy fell out of her stroller and suffered a skull fracture; an allegation the children rarely attended school; and an allegation of inappropriate discipline. After investigation, San Diego Children's Services closed each case finding each referral either inconclusive or unfounded.
Nevertheless, San Diego Children's Services reported mother displayed a "distinct lack of parenting skills. She appears to believe that everyone is out to get her and that nothing is her fault.... For example, *166 mother insisted the children attended school regularly, despite documentary evidence to the contrary." In the San Diego caseworker's opinion, the children were dirty, uncared for, and without a change of clothes. Despite her situation the worker reported mother was uncooperative and refused all offers of assistance. The San Diego worker concluded her report with the suggestion: "All referrals on this family should be given a high priority as this family is at extremely high risk."
Shortly thereafter, mother and the children moved to Pasadena.
On June 29, 2000, the DCFS took the children into protective custody when mother's daughter-in-law called the DCFS to say mother and her children were at her residence but she was unable to care for them. Mother's daughter-in-law told the DCFS mother had made no plans for the children's care and had no resources to do so. Mother's adult son stated he loved his mother but was concerned for his siblings. He told the worker the children needed a permanent home so they could attend school and have a stable life.
The DCFS placed the children in foster care. A few days later the DCFS filed a Welfare and Institutions Code section 300[1] petition which, as amended, alleged mother had failed to ensure Janet's and Donald's school attendance; this failure created a risk of physical and emotional harm for siblings Dorothy and Tercel; and mother demonstrated numerous mental and emotional problems which endangered the children's physical and emotional health.[2]
At the detention hearing on July 5, 2000, mother entered a general denial to the allegations of the petition. The juvenile court found a prima facie case under section 300, subdivisions (b), (g) and (j) for detaining the children. The court ordered monitored visits for mother, but gave the DCFS discretion to liberalize her visits. The court also gave the DCFS discretion to release the minors to an appropriate relative and directed the DCFS to explore the possibility of enrolling Janet and Donald in summer school.
The two oldest children provided statements for the report prepared for the jurisdiction hearing. Donald stated he had head lice but some special shampoo had helped. Donald explained why he did not attend school regularly. He said they did not have a permanent place to stay so they did not register for school. He figured he either missed half a semester or half of a school year. He stated he last attended the 7th grade but did not complete the school year. Janet was beginning the 9th grade but could not recall how much school she had missed. Janet confirmed she had not attended school for several months. A letter from a teacher at their elementary school indicated Janet and Donald had attended school half the time since their enrollment in December 1999. The teacher observed Janet and Donald had developed a "code of silence" regarding the reason for their absences and about their life with mother.
Both children stated they wished mother had a permanent home so they could all live together again. The two other children were too young to make any statement.
The DCFS interviewed mother. She denied her children had ever missed *167 school. She claimed they attended some sort of classes offered by the various shelters. Mother also characterized the allegations she had neglected her children's medical care as lies.
Mother acknowledged she was periodically depressed and/or suffered from post-traumatic stress disorder. She attributed these emotional problems to being raped by her brothers when she was young. Mother stated she does not take medications out of concern for the chemicals' adverse side effects. She prefers taking the herb, St. John's Wort, which mother asserts has been effective in reducing symptoms of both her depression and P.M.S. When asked what help mother felt she needed, mother stated she needed housing, medication for Donald's depression and help in getting him to his appointments, and help with Dorothy who, according to mother, was "acting out."
The DCFS contacted Janet and Donald's father in Washington State. He stated he loved his children but found it very difficult to keep track of them because mother moved so much. He explained he married mother in the 1980's when she became pregnant but stated mother moved out after a short time. In 1999 he learned mother had divorced him in 1993. Donald Sr. told the worker he had been making child support payments to the State of Washington in the meantime.
Dorothy and Tercel's father could not be located for an interview.
At the August 23, 2000, jurisdiction hearing mother's counsel informed the court mother was ready, willing and able to resume custody of her children and argued the allegations of the petition, either singly or in combination, did not justify removing the children from her custody. Counsel told the court, "given the allegations that are before the courtI would never allow the mother to voluntarily stipulate to the language that's before the court. [¶] They are alleging that mother has demonstrated particular incapacities. And having made that allegation, it is mymother will not enter a plea. She will not submit. She will not participate in any stipulation that she is incapable in any fashion. That's the first issue." Mother also challenged the legal adequacy of the factual allegations of the petition claiming she had failed to provide the children with basic necessities. Finally, mother's counsel argued, "And her contention is that that standing alone, any one of those elements missing are or in conjunction together would not constitute grounds to deprive a parent of legal custody of the child."
The court thus scheduled a contested jurisdiction hearing for October 4, 2000. At its conclusion the court sustained the amended section 300 petition under subdivisions (b), (g) and (j). These counts alleged mother had failed to protect her children because she had failed to ensure Janet and Donald's school attendance, such conduct subjected their siblings to the risk of serious physical and emotional harm, and mother had demonstrated numerous mental and emotional problems. Over mother's counsel's objections, the court ordered a psychiatric evaluation to determine whether mother suffered from "any disorder which precludes proper parenting." The court scheduled a disposition hearing for November 30, 2000.
In late November 2000 the juvenile court received mother's psychological evaluation prepared by Dr. Michael Ward. He found mother to be "fully alert and oriented." He found no "psychotic-type symptomatology or bizarre behavior." However, the doctor noted "there were times when her thinking became a little tangential and/or disorganized." He reported mother's various test scores were unreliable *168 because she had deliberately adjusted all her responses to present herself in the most positive light possible. The doctor opined, "[w]hat this kind of marked defensiveness suggests is that she is probably also fairly lacking in insight and ... individuals who are this defensive are also described as being fairly rigid and inflexible. All of this could certainly have implications for the whole issue of their ability to respond to treatment, especially since such individuals frankly do not see themselves as having any problems and in need of any treatment which certainly appears to be the case here." Indeed, mother had informed the doctor she had discontinued individual and group psychiatric sessions, claiming she had been too busy with court activities.
Dr. Ward concluded mother would benefit from psychiatric treatment, including medication. He recommended proceeding "in a conservative fashion." In the meantime, he saw no reason why mother "could not have fairly frequent and somewhat extended visitation with her children, assuming she has an appropriate set-up for such visitation."
The court received Dr. Ward's report but commented it was "not very helpful." The court continued the disposition hearing to January 22, 2001.
The DCFS report for the January 2001 hearing stated mother had been in "constant" contact with the DCFS and had visited her children regularly on a weekly basis. However, the DCFS stated it was unclear what other reunification efforts mother had made.
The foster family agency reported Janet was in counseling to address depression, loss issues, and daily life problems. She was attending high school, was on "college track," and had received all As and Bs on her most recent report card. She had purchased contact lenses out of her allowance and was very pleased not to be wearing glasses anymore. She had recently received the rest of her immunizations and had had 10 cavities taken care of at a recent visit to the dentist.
Donald was also doing well at the foster home. He told the worker he was excited about having his own bedroom and was enjoying his "newfound" privacy. He was attending school and had a B average. Donald was also in counseling to address his depression and loss issues. At a recent visit to the dentist, he too had 10 cavities which required fillings.
At the January 22, 2001, disposition hearing the court found by clear and convincing evidence there were no reasonable means to protect the children without removing them from mother's custody. The court declared the children dependents of the juvenile court, removed them from mother's custody and placed them under the supervision of the DCFS for suitable placement. The juvenile court ordered mother to participate in parenting classes, individual counseling with a DCFS approved psychiatrist, and conjoint counseling with the children when the therapists deemed it appropriate. The court ordered visits be monitored but gave the DCFS discretion to liberalize mother's visits. The court ordered Donald Sr. to participate in parenting classes in Washington and directed the DCFS to initiate a home study with the state of Washington regarding Donald Sr.
Mother objected and told the court she was "not accepting the disposition stage." Mother stated the children were taken from her "illegally ... for lack of emergency shelter...." Mother also claimed the children "were never out of school" and the various children's services departments had never provided her services. She told the court "the intent of the law is *169 not to take children unless it's absolutely necessary.... It's supposed to be the last resort."
The court continued the matter for a six-month review hearing.
Three days later mother filed two notices of appeal to challenge the court's jurisdiction and disposition orders and its summary denials of her petitions to modify the court's orders.[3]

DISCUSSION

THE ALLEGATIONS OF THE PETITION DO NOT STATE A BASIS FOR JUVENILE COURT JURISDICTION.
Mother renews her contention the petition lacked specific factual allegations to support the finding of jurisdiction under section 300, subdivision (b). Specifically, mother argues the petition pled no facts to show the children were at "a substantial risk" of suffering "serious physical harm or illness" as this subdivision requires. Mother also argues because the validity of the allegation of section 300, subdivision (j) for "risk of abuse or neglect a sibling" is directly dependent on the invalid subdivision (b) allegation, the order sustaining the petition is not supported by the allegations and must therefore be reversed.[4]
Section 300 subdivision (b) provides a child is subject to juvenile court jurisdiction if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. No child shall be found to be a person described by this subdivision solely due to the lack of an emergency shelter for the family.... The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (Italics added.)[5]
*170 In this facial challenge to the petition we apply the rules akin to a demurrer.[6] We construe the well-pleaded facts in favor of the petition in order to determine whether the DCFS pleaded facts to establish mother failed to supervise or protect the children within the meaning of section 300, subdivision (b).
Section 332, subdivision (f) requires a dependency petition to contain a "concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted." The allegations of the petition sustained under section 300, subdivision (b) alleged:[7] "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, [¶] as a result of the failure or inability of his or her parent ... to supervise or protect the child adequately, [¶][¶][¶] by the inability of the parent ... to provide regular care for the child due to the parent's ... mental illness, developmental disability, or substance abuse...."
The facts in the petition offered in support of this allegation alleged:
"b-2 The children Janet [], Donald [], Dorothy [] and Tercel[s] mother, Tricia [] has failed to ensure [] children Janet and [Donald]'s school attendance. Such failure to ensure the children Jane [sic] and Donald's school attendance deprives the children of an education and ongoing peer relationships conducive to the children's normal growth and development. Such conduct by the children's mother endangers the children's physical and emotional health and safety and places them and their siblings Dorothy and Tercel at risk of physical and emotional harm and damage. [¶]
"b-4 The children Janet [], Donald [], Dorothy [] and Tercel['s] mother, Tricia [] has demonstrated numerous mental and emotional problems. Such mental and emotional problems on the part of the children's mother endangers the children's physical and emotional health and safety and places the children at risk of physical and emotional harm and damage."
The predecessor statute to section 300 required no separate showing of concrete harm or risk of physical harm to a child. A child could be declared a dependent if he or she was "in need of proper and effective parental care or control and ha[d] no parent or guardian ... willing to exercise or capable of exercising such care or control."[8] However, the 1987 revisions to section 300 added this requirement, indicating a legislative intention to narrow the grounds on which juvenile court jurisdiction could be invoked.[9] Now, before courts may exercise jurisdiction under section 300, subdivision (b) there must be evidence "indicating the child is exposed to a substantial risk of serious physical harm or illness." [10]
*171 In determining what constitutes a substantial risk of serious physical harm, courts rely on subdivision (a) of section 300, which uses the same language to authorize jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." For purposes of subdivision (a) "a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian, which indicate the child is at risk of serious physical harm...."[11]
Thus, evidence of past events may have some probative value in considering current conditions.[12] But under section 300, subdivision (b) this is only true if circumstances existing at the time of the hearing make it likely the children will suffer the same type of "serious physical harm or illness" in the future. This is so because under subdivision (b) a child may be considered dependent "only so long as is necessary" to protect the child from risk of suffering serious physical harm or illness. For this reason, "the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm, `[t]here must be some reason to believe the acts may continue in the future.'"[13]
Sustained allegation b-2 stated mother had failed to ensure Janet and Donald's school attendance. The worker's reports and other documentary evidence confirm the truth of this allegation. It is also no doubt true failing to go to school regularly is very detrimental to the children. Failing to attend school regularly not only deprives the children of an education, but also of the social interaction and "peer relationships necessary for normal growth and development," as alleged in the petition. It is a very serious allegation and a factual circumstance which needed immediate correction. However, that is not the same as saying the failure to attend school created a "substantial risk" of suffering "serious physical harm or illness." The lack of education may well cause psychic or emotional or financial or social harm. But there are no facts alleged, or suggested by the supporting documentary evidence, to indicate mother's failure to ensure the children's regular school attendance subjected the children to physical injury or illness, serious or otherwise. We thus fail to see how this factual ground can support the court's order sustaining the petition under section 300, subdivision (b).
The other proposed ground stated in b-4 was based on the fact mother had demonstrated numerous "mental and emotional problems." The petition alleged these problems endangered the children's "physical and emotional health and safety." The petition itself provided no other facts to suggest how mother's mental health problems created a "substantial risk" her children would suffer "serious physical injury or illness." It is true, the DCFS is not required "to regurgitate the contents of the social worker's report into a petition."[14] However, a facially sufficient *172 pleading is nevertheless necessary. The petition should present essential facts necessary to establish at least one valid ground for asserting juvenile court jurisdiction.[15]
Recognizing the inadequacies of the petition, the DCFS urges this court to go beyond the petition and consider facts in the social workers' reports offered in support of the allegation regarding mother's mental health problems. The department points to the fact Tercel was removed from mother's care for failure to thrive. However, he was returned to her care a few months later in April 1998, and more than two years before the DCFS filed the current petition. This historical fact does not establish Tercel is currently at risk of serious physical harm or illness. Indeed, he was only a dependent child under section 300, subdivision (b) as long as was necessary to protect him from suffering this harm.[16]
The department also points to the six referrals to San Diego Children's Services which occurred in the three-month period before mother brought her family to Pasadena. However, in each instance the cases were closed as unfounded or unsubstantiated. Of the referrals, at least two were quite serious. Mother claimed an acquaintance's two young sons had molested Dorothy while the family was staying in the acquaintance's home. Mother took Dorothy for an exam at an emergency hospital and spoke to police officers there. Neither the examination nor further investigation substantiated the molestation charge. Nevertheless, mother immediately moved her family from this home. San Diego Children's Services found mother's conduct appropriate.
Next, employees at a fast food restaurant claimed they saw mother hold her two youngest children off the floor by their hair. Mother denied the allegation. The two older children denied their mother would do such a thing. The investigating social worker examined the children's heads to determine whether they experienced pain and found neither child's head was sensitive enough to react to touch. The department dismissed the allegation as unsubstantiated.
The next serious incident was when Dorothy fell from a stroller and suffered a fractured skull. Ultimately, the department found the situation consistent with mother's claim of accident and dismissed the case.
The Pasadena shelter reported two of mother's children suffered from head lice which the DCFS claimed demonstrated mother's inability to provide medical care. However, head lice are a common affliction of children everywhere, including those only attending the most prestigious day camps and private schools. In any event, this temporary problem hardly amounts to a serious physical injury or illness as is required for a finding under section 300, subdivision (b). This is especially true where the affliction was completely "cured" through the simple use of special shampoos and regular combing.
This is the sum total of the evidence in the documents supporting the petition which bear on physical injury. Significantly, none of these conditions existed at the time of the hearing on the petition. In addition, none of the sustained allegations claimed these events were the result of, or were caused by, mother's mental and emotional problems.[17] Most importantly, however, *173 neither the petition nor the reports alleged necessary facts to support the conclusion the children were currently at a substantial risk of serious physical injury or illness because of mother's mental and emotional problems.
The present case is similar to the situation in In re Alysha S.[18] There the petition alleged a failure to protect based on an incident of the father's domestic violence against the mother. The appellate court found the pleading inadequate because it did not allege the violence was ongoing. In addition, the petition did not allege the child either perceived, or was affected by, the violence.[19] The other theory of the alleged failure to protect was the allegation the father had touched the child's buttocks and vagina. The court similarly found this allegation insufficient to sustain the petition. The incident occurred more than a year before the petition was filed and there was no allegation the acts may continue in the future to put the child currently at risk for serious physical injury from similar behavior.[20] "All that is alleged is that the father, over one year ago, touched the minor's privates in a manner the mother felt was inappropriate. That alone does not now establish a reason for state interference with the family."[21]
"Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a substantial risk of serious physical harm or illness."[22] In this case we conclude the allegations of the petition sustained under section 300, subdivision (b) are not sufficient to support jurisdiction.[23] It necessarily follows the sustained *174 allegation of sibling abuse alleged under section 300, subdivision (j) must fail as well. Its validity in this case was dependent on a sustained finding of a substantial risk of serious physical harm or illness under subdivision (b).[24]
We note the court sustained the allegation of the petition asserted under section 300, subdivision (g). This allegation was factually supported. It alleged Dorothy and Tercel's father's whereabouts were unknown and he had left the children without providing for their support. It is true a juvenile court may take jurisdiction over a child even if only one of the child's parents is unsuitable.[25] Thus, in normal circumstances a finding against one parent is a finding against both in terms of the child being adjudged a dependent.[26] However, the fact the father of two of the four children was whereabouts unknown and had failed to provide for their needs, was not the reason for the referral, nor the reason the DCFS filed the petition in this case. In fact, the DCFS was unaware of this father's existence at the time and would not have included this allegation had the allegations against mother not been brought. It would be anomalous to permit the fact of an absent father to be the sole justification to assert jurisdiction in this case and to detain the children from their custodial parent. If this was permitted, the DCFS could simply dispense with factually grounded petitions in any number of cases where a noncustodial parent has abandoned his or her children even in circumstances where the children are well cared for by their custodial parent. In the circumstances of this case where the children were removed from mother's custody, we find this single allegation in and of itself insufficient to support the petition against mother, as distinct from this particular father.
Our conclusion the sustained allegations of the petition do not support jurisdiction does not mean the DCFS cannot try again. Indeed, it is entirely possible valid grounds exist for the state to assume jurisdiction over these children and indeed it may be in the children's best interests for this to happen. But DCFS failed to prove the grounds it asserted or to assert the grounds it might have proved. In light of our determination the jurisdictional order must be reversed, the dispositional and all subsequent orders, including the court's orders denying mother's petitions for modification, are moot.

DISPOSITION
The orders of the juvenile court are reversed and the cause is remanded.
We concur: LILLIE, P.J. and BOLAND, J.[*]
NOTES
[1] All further statutory references are to the Welfare and Institutions Code.
[2] Section 300, subdivisions (b) and (j). The petition also alleged the fathers had left the children without any provision for support and were then whereabouts unknown. (§ 300, subd. (g).)
[3] Section 388.
[4] Prior to the jurisdiction hearing mother's counsel objected to the legal sufficiency of the supporting factual allegations. She argued none of them singly or in combination constituted grounds to deprive a parent of custody. Mother's objection is sufficient to preserve the issue for review on appeal. The DCFS does not argue otherwise. (Compare, In re Shelley J. (1998) 68 Cal.App.4th 322, 328, 79 Cal. Rptr.2d 922 [mother waived her right to challenge the sufficiency of the petition by failing to object to the legal sufficiency of the petition in the trial court].)
[5] The other grounds for juvenile court jurisdiction include serious physical harm inflicted nonaccidentally on the child by the child's parent or guardian (§ 300, subd. (a)); serious emotional damage evidenced by severe anxiety, depression, withdrawal or "untoward" aggressive behavior (§ 300, subd. (c)); sexual abuse (§ 300, subd. (d)); severe physical abuse on a child under five years old (§ 300, subd. (e)); sibling death caused by the parent or guardian (§ 300, subd. (f)); the parent is incarcerated, institutionalized or is whereabouts unknown and has left the child without any provision for support (§ 300, subd. (g)); the child has been freed for adoption (§ 300, subd. (h)); acts of cruelty on the child (§ 300, subd. (i)); and the child's sibling has been abused or neglected "as defined in subdivisions (a), (b), (d), (e), or (i) and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j).)
[6] See, In re Nicholas B. (2001) 88 Cal.App.4th 1126, 1133, 106 Cal.Rptr.2d 465; In re Alysha S. (1996) 51 Cal.App.4th 393, 397, 58 Cal. Rptr.2d 494.
[7] The DCFS dismissed four of the original seven allegations of the petition offered in support of a finding of jurisdiction under section 300, subdivision (b).
[8] Former section 300, subdivision (a) [repealed stats. 1987, ch. 1485, § 3, p. 5603],
[9] See, e.g., In re Rocco M. (1991) 1 Cal. App.4th 814, 823, 2 Cal.Rptr.2d 429 ["The legislative history thus confirms an unmistakable intention to narrow the grounds on which children may be subjected to juvenile court jurisdiction."].
[10] In re Rocco M., supra, 1 Cal.App.4th at p. 823, 2 Cal.Rptr.2d 429.
[11] Section 300, subdivision (a).
[12] In re Rocco M., supra, 1 Cal.App.4th at p. 824, 2 Cal.Rptr.2d 429.
[13] In re Rocco M., supra, 1 Cal.App.4th at p. 824, 2 Cal.Rptr.2d 429, quoting In re Jennifer P. (1985) 174 Cal.App.3d 322, 326, 219 Cal. Rptr. 909.
[14] In re Alysha S., supra, 51 Cal.App.4th at p. 399, 58 Cal.Rptr.2d 494.
[15] In re Alysha S., supra, 51 Cal.App.4th at pp. 399-400, 58 Cal.Rptr.2d 494.
[16] Section 300, subdivision (b).
[17] We note the referral in this case claimed Donald appeared to be extremely depressed. The DCFS did not allege this fact in the petition. Nor is there any suggestion Donald's depression was caused in any way by mother's conduct or inability to provide necessary mental health treatment, a necessary element to sustain a section 300 petition under subdivision (c). (See, In re Alexander K. (1993) 14 Cal.App.4th 549, 557, 18 Cal. Rptr.2d 22; In re Nicholas B., supra, 88 Cal. App.4th at p. 1136, fn. 11, 106 Cal.Rptr.2d 465.)
[18] In re Alysha S., supra, 51 Cal.App.4th 393, 58 Cal.Rptr.2d 494.
[19] In re Alysha S., supra, 51 Cal.App.4th at p. 398, 58 Cal.Rptr.2d 494.
[20] In re Alysha S., supra, 51 Cal.App.4th at pp. 398-399, 58 Cal.Rptr.2d 494.
[21] In re Alysha S., supra, 51 Cal.App.4th at p. 399, 58 Cal.Rptr.2d 494. In In re Nicholas B., supra, 88 Cal.App.4th 1126, 106 Cal. Rptr.2d 465 the appellate court also found the sustained allegations of the petition unsupported. The court found the triggering act of physical abuse was an isolated event which the mother admitted and regretted. There was no allegation or evidence to suggest she would commit any such acts in the future. (Id. at pp. 1134-1135, 106 Cal.Rptr.2d 465.) On the other hand, there was evidence the father routinely applied physical discipline, and sometimes inappropriately. However, these acts were not alleged in the petition. (Id. at p. 1135, 106 Cal.Rptr.2d 465.) The rest of the allegations offered to support a finding of severe emotional harm discussed the child's situation and did not link the child's mental problems to any conduct by the parents. (Id. at pp. 1135-1136, 106 Cal. Rptr.2d 465.) The court concluded the allegations of the petition were facially inadequate to support juvenile court jurisdiction. (Id. at p. 1137, 106 Cal.Rptr.2d 465.)
[22] In re Rocco M., supra, 1 Cal.App.4th at p. 823, 2 Cal.Rptr.2d 429, original italics.
[23] The petition originally alleged several factual grounds for asserting jurisdiction under section 300, subdivision (b). One of these grounds alleged, "The children Janet [], Donald [], Dorothy [] and Tercel['s] mother, Tricia['s] current whereabouts is unknown and she has failed to provide the children with the basic necessities of life including, but not limited to, food[,] clothing, shelter and medical care. Further the children's mother failed to make a plan for the on-going care and supervision of the children. Such failure on the part of the children's mother endangers their physical and emotional harm and damage [sic] and places them at risk of physical and emotional harm and damage." The juvenile court did not have an opportunity to sustain this factual ground for assertion of jurisdiction under subdivision (b). The DCFS dismissed this count prior to the adjudication hearing. Because this count was dismissed prior to the hearing, mother similarly had no reason to challenge the validity of any of the evidence supporting this allegation.
[24] Section 300, subdivision (j) provides: "The child's sibling has been abused or neglected, as defined in subdivision (a) [serious physical harm inflicted nonaccidentally], (b) [substantial risk of serious physical harm or illness], (d) [sexual abuse], (e) [severe physical abuse on a child under the age of five], or (i) [acts of cruelty inflicted by the parent or guardian], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions
[25] In re Jeffrey P. (1990) 218 Cal.App.3d 1548, 1553-1554, 267 Cal.Rptr. 764.
[26] In re Alysha S., supra, 51 Cal.App.4th at p. 397, 58 Cal.Rptr.2d 494.
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.