Filed 5/24/13  In re I.J. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re I.J., a Person Coming Under the Juvenile Court Law. | B243287<br><br>(Los Angeles County<br>Super. Ct. No. CK93924) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MAURICE L.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Stevenson, Referee.  Affirmed.

Kimberly A. Knill, under appointment by the Court of Appeal, for Dependant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kimberly A. Roura, Associate County Counsel, for Plaintiff and Respondent.

_____

In an order dated August 3, 2012, the juvenile court asserted jurisdiction over I.J. pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] and declared I.J. a dependent child of the court. The court found that the domestic violence between appellant Maurice L. (father) and Shelly J. (mother) endangered I.J.'s physical health and safety. Father argues that there was no substantial evidence supporting the court's jurisdictional finding. We reject father's argument and affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *I.J.'s Family*

I.J. was born in July 2010. He lived with mother and father until August, 2011, when father was incarcerated for possession or purchase of a controlled substance. Father has been convicted of five felonies and two misdemeanors related to illicit drugs. He has never been convicted of a domestic violence crime, though in 2007 he was charged with inflicting corporal injury on a spouse or cohabitant.

I.J. has two half-sisters, Brandi W. and Nina W., who were 13 and 9 years old, respectively, when these proceedings commenced. Brandi's presumed father is Jason M. Brandi usually lived with Jason in Alaska for most of the year, and spent her summers with mother in California. In 2012, however, Brandi spent the school year with mother, and was planning on spending the summer with Jason when this action was filed. Nina lives with her alleged father, Edward P., in Wisconsin.

2.    *The Detention of I.J. and Brandi*

On June 8, 2012, when I.J. was about 22 months old, mother called the police and asked for assistance because someone was allegedly breaking into her apartment in Hollywood. When two police officers arrived at mother's home, they did not see any signs of a burglary.

---

[1]    All future statutory references are to the Welfare and Institutions Code.

The officers, however, found I.J. walking around with a dirty diaper sticking to his skin, and a rash on the inside of his thighs and on his genitals. The child appeared malnourished. He also had "pink eye," which caused one of his eyes to swell so badly it was almost closed. Mother appeared to be under the influence of a controlled substance. The apartment was filthy and unsanitary, filled with roaches and other insects, and old food on the floor. The officers also found over 200 anti-depression bills in a cup on the dresser, which was within I.J.'s reach. Mother was arrested for child endangerment. I.J. was detained by respondent Los Angeles Country Department of Children and Family Services (the Department) and placed in foster care.

When the two police officers arrived at mother's home, Brandi was at a dance recital. Later that evening, a social worker employed by the Department interviewed Brandi. Brandi reported, inter alia, that father and mother had a history of domestic violence. According to Brandi, father and mother would hit and throw objects at each other. Although Brandi and I.J. were in another room when the incidents occurred, Brandi could hear items breaking, and she saw father and mother with bruises and scratches after the altercations.

The Department social worker also interviewed a number of other witnesses, including Mary L., I.J.'s maternal grandmother. The maternal grandmother stated that she was aware of domestic violence between mother and father when the couple lived in Wisconsin.

### 3. *The Juvenile Dependency Petition*

On June 13, 2012, the Department filed a juvenile dependency petition requesting that the juvenile court assert jurisdiction over I.J. and Brandi pursuant to section 300, subdivisions (a) [serious physical harm] and (b) [failure to protect]. Of relevance here are counts b-1 and b-4. In count b-1, the petition alleged that father and mother's history of domestic violence endangers the children's "physical health and safety and places the children at risk of physical harm, damage and danger." Count b-4 was based on mother's possession of 250 unsecured prescription pills in a cup in the children's home. On the

same day the petition was filed, the juvenile court found that there was a prima facie case to detain the children.

4. *Jurisdiction/Disposition Report*

Shortly before the jurisdictional and dispositional hearing, the Department filed a jurisdiction/disposition report dated August 3, 2012. The report indicated that Brandi was interviewed a second time on July 23, 2012. Brandi reiterated to a Department social worker that mother and father engaged in domestic violence. According to Brandi, the couple frequently fought because mother did not want father smoking marijuana, and father wished to do so. Brandi also stated that after mother had altercations with father, she saw mother with bruises on her arms and legs.

The Department also interviewed father. Father denied ever engaging in domestic violence with mother.

When mother was asked by a Department social worker about the allegations of domestic violence in the petition, mother stated: "It is possible that this statement is true."

The Department concluded that the parents' denial or minimization of domestic violence indicated that there continued to be a substantial risk to the children.

5. *August 3, 2012, Hearing and Order*

On August 3, 2012, the juvenile court held a jurisdictional and dispositional hearing. At the hearing, the court stated that it found Brandi's statements regarding domestic violence credible, even though Brandi did not actually see the violence occur.

Father was brought to the hearing from the county jail. He indicated at that time he was scheduled to be released on January 24, 2013.

At the hearing, the Department moved to dismiss the allegations regarding Brandi in the petition. The Department did so because it determined that Brandi could be safely released to her father, Jason, without further court supervision. The court granted the motion. This appeal does not involve the court's orders regarding Brandi.

4

In its August 3, 2012, order, the juvenile court sustained the petition with respect to counts b-1 and b-4, discussed *ante*, and dismissed the remaining counts. The order also stated that father and mother were to be given family reunification services, and that father's services were to include domestic violence counseling. Additionally, the order provided that mother and father were entitled to monitored visits.

Father filed a timely notice of appeal of the August 3, 2012, order.

## ISSUE

The issue is whether there was substantial evidence supporting the juvenile court's August 3, 2012, order asserting jurisdiction over I.J.

## DISCUSSION

We review the juvenile court's jurisdictional findings under the substantial evidence test. (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) In determining whether there is substantial evidence, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

Section 300, subdivision (b) provides a child comes within the jurisdiction of the juvenile court if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of a parent's failure or inability to adequately supervise or protect the child. The Department alleges that at the time of the August 3, 2012 hearing, there was a substantial risk that I.J. would suffer from serious physical harm or illness. By sustaining the petition, the juvenile court impliedly found this allegation true.

5

There was substantial evidence supporting the juvenile court's finding.  According to Brandi, father and mother frequently engaged in domestic violence, including throwing things at each other, while I.J. was in the house.  Brandi's statements were corroborated by maternal grandmother's statement that father and mother had a history of domestic violence.  Further, when asked about the allegations of domestic violence in the petition, mother conceded that the allegations "might be true."  A reasonable juvenile court, weighing the evidence, could have concluded that Brandi's statements regarding father's domestic violence against mother were true.  The domestic violence described by Brandi endangers I.J., who is still a toddler, because he can wonder into the room where it is occurring, "and be accidently hit by a thrown object, by a fist, arm, foot or leg."  (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 194; accord *In re E.B.* (2010) 184 Cal.App.4th 568, 576 [evidence of domestic violence was sufficient to support jurisdiction pursuant to section 300, subdivision (b)].)

Father argues that although there was evidence of *past* domestic violence, there was no evidence to support the juvenile court's assertion of jurisdiction *at the time of the jurisdictional hearing* because he was incarcerated then.  This argument is anchored in statements made in *In re Rocco M.* (1991) 1 Cal.App.4th 814 (*Rocco M.*) and cases following *Rocco M.*, such as *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399 and *In re Janet T.* (2001) 93 Cal.App.4th 377, 388.  In *Rocco M.*, the court stated:  "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.  [Citations.]  Thus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' "  (*Rocco M.,* at p. 824, fn. omitted.)

Several cases have downplayed the significance *Rocco M*. in light of subsequent amendments to section 300.  In *In re J.K.*, for example, the court stated:  "*Rocco M.*'s analysis does not account for or address the change in the statutory scheme, which provides for the exercise of jurisdiction based on prior harm."  (*In re J.K.*, *supra*,

174 Cal.App.4th at p. 1436.)  The court also stated "the value of the oft-quoted language in *Rocco M.* is further diminished because it is clearly dicta." (*In re J.K.*, at p. 1437; accord *In re David H.* (2008) 165 Cal.App.4th 1626, 1642, fn. 14.)

Here, even under the standard enunciated in *Rocco M.*, there was substantial evidence supporting the juvenile court's assertion of jurisdiction pursuant to section 300, subdivision (b).  At the time of the jurisdictional hearing, there was no evidence that father had ameliorated his pattern and practice of engaging in domestic violence.  To the contrary, father outright denied that he ever engaged in such conduct.  A reasonable juvenile court could have concluded that father was falsely denying his history of domestic violence, and thus had not made any progress toward ending such behavior.

Moreover, father was scheduled to be released from jail about five months after the hearing.  To protect I.J., the juvenile court asserted jurisdiction and ordered father to enroll in a domestic violence counselling.  We find no error in the juvenile court's order.

## DISPOSITION

The juvenile court's order dated August 3, 2012, is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.


We concur:



KLEIN, P. J.




ALDRICH, J.

8