Filed 10/26/15  In re Y.B. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Y.B., a Person Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY DEPARTMENT OF HEALTH & SOCIAL SERVICES, <br><br>        Plaintiff and Respondent, <br><br> v. <br><br> A.S., <br><br>        Defendant and Appellant. | A145193 <br><br> (Solano County <br> Super. Ct. No. J42893) |

A.S. (Father) appeals jurisdictional and dispositional orders finding his daughter, Y.B. (Minor), a dependent child and removing her from the home of her mother, C.B. (Mother).  Father was incarcerated at all relevant times.  He contends the juvenile court erred in making its findings in his absence.  We shall affirm the orders.

## I.  BACKGROUND

In February 2015, the Solano County Department of Health and Social Services (the Department) filed a petition pursuant to Welfare and Institutions Code section 300 on behalf of Minor, who was 14 years old, and her younger half-sister (Sister).[1]  As later amended, the petition alleged that Mother's live-in boyfriend, J.V., had used excessive

---

[1] J.V. is Sister's father.  The sole appellant in this case is Father, who challenges the orders only in connection with Minor.

physical discipline on Minor, resulting in bruises and red marks on her arms, hands, and legs; that Minor had reported J.V. had used inappropriate discipline previously; and that Mother had failed to protect Minor. The petition also alleged that Father was serving a life sentence in prison and that he had not provided and was not able to provide care and support for Minor.

Minor had been removed from the home and was afraid to return while J.V. was there. The detention report listed Father's address as unknown, and indicated Mother believed he was incarcerated. Mother knew the name of Father's mother (Paternal Grandmother), but did not know her telephone number. Minor and Sister were placed in a foster home in Solano County.

The March 2015 jurisdiction report noted that all parties confirmed that Father was Minor's biological father, although he was not present when Minor was born and his name was not on her birth certificate. Mother reported that Father had had no contact with Minor since she was five years old and had not provided for her support. She did not know Father's whereabouts but believed he was imprisoned in California.

The Department carried out an absent parent search and located Father's father (Grandfather), who said he and Paternal Grandmother lived in Long Beach. They had last spoken with Minor and Mother by telephone in December 2014.

Grandfather told the social worker Father was serving a sentence of life in prison. An investigation revealed Father had amassed an extensive criminal history between 1995 and 2006, including convictions for false imprisonment, taking a vehicle without consent, receiving stolen property, false imprisonment with violence, driving with a suspended license, attempted burglary, and evading a peace officer. In 2012, he was sentenced to life in prison after being convicted of kidnapping during a carjacking, attempted murder, assault with a semi-automatic weapon, possession of a firearm, and shooting at an inhabited dwelling. The social worker had mailed a letter to Father's address in prison informing him of the child welfare case. Minor told the social worker she had not had contact with Father since she was five years old, but that she would like to visit him in prison.

2

The jurisdiction report also conveyed Minor's statement that J.V. had first hit her when she was about nine years old, that he hit her periodically with a belt or spatula when she did something wrong, and that if Mother said something to J.V. about it, he would hit Mother with "anything he finds." J.V. had been abusing Mother physically since the beginning of their relationship in 2006. Mother allowed J.V. to hit Minor, and Minor was afraid of Mother. Minor told the social worker she was angry and upset and did not want visitation with Mother, that she was not close to Mother because of J.V.'s actions, and that she did not want family counseling. She wanted to live with Mother's mother (Maternal Grandmother) in Los Angeles. Minor said she was close to Maternal Grandmother, talked to her every other day, and had been asking for two years to live with her. Maternal Grandmother told the social worker she would be willing to care for Minor and Sister, that she was close to the family, and that she visited them periodically.

A disposition report was prepared in April 2015. The report noted that Father had written a letter to the Department stating he was Minor's father. Mother told the social worker that Minor had only met Father about twice in her life.

Mother had moved into her own apartment because she and J.V. wanted Minor to feel she could return to Mother safely. Mother had a job, but J.V. would contribute financial support when necessary. J.V. said that he and Mother were "dating" and hoped to marry when the child welfare case was complete. Mother had begun participating in individual therapy and parenting classes and was visiting Minor regularly. She reported that the parenting classes had been beneficial. She wanted to receive reunification services, increased visitation, and joint therapy with Minor.

Minor said she wanted to live with Maternal Grandmother in Los Angeles, a cousin in Ventura, or a friend in San Francisco. She later said she would like to continue in her current placement in Solano County. She was willing to increase her visits with Mother to twice a week, but was not sure if she was ready for joint therapy with Mother.

Maternal Grandmother remained willing to provide a permanent home for Minor and Sister. However, because Mother was participating in reunification services, the Department took the position that placement at her home in Los Angeles was not

3

appropriate. For the same reason, the Department concluded it was not appropriate to place Minor with a maternal uncle who lived in Japan.

A combined jurisdictional and dispositional hearing was scheduled for April 29, 2015, and a copy of the notice was sent to Father by mail. On that date, counsel was appointed for Father, and the matter was continued until May 7. At the May 7 hearing, Father's counsel stated he had made repeated unsuccessful attempts to contact Father by telephone and facsimile. He had mailed a letter to Father but had not received a reply.

The juvenile court sustained the allegations of the petition, found it had jurisdiction over Minor, continued Minor in her out-of-home placement, and ordered reunification services for Mother.[2]

While this appeal was pending, the Department filed a motion to augment the record on appeal, which Father did not oppose. We grant the motion. The motion includes a declaration by the deputy counsel assigned to the case, Jo Ann Iwasaki Parker, who states that the social worker had told her before the jurisdiction/disposition hearing that Father had requested appointment of counsel; that Parker contacted the juvenile court and requested counsel for Father; that she had reviewed the social worker's files and determined that the social worker had sent the original petition and other legal documents to Father and had received responses; and that Minor and Mother were in active reunification. Parker attached a proof of service prepared by the social worker, indicating she had sent a letter to Father, along with a copy of the original petition. In the attached letter, the social worker informed Father about the dependency case, gave him her phone number and asked him to call her collect, and asked him to fill out an enclosed parent questionnaire. The social worker also provided addressed, postage-paid envelopes to allow him to communicate with Minor and enclosed parenting articles. Father completed the questionnaire and returned it to the social worker, with a date of March 15, 2015. He provided his mother's address in Long Beach and indicated she would be suitable to provide temporary care for Minor.

---

[2] Sister was returned to Mother, and the court ordered that Minor be allowed to visit Sister at least once a week.

## II. DISCUSSION

In this appeal from the court's order, Father contends he was entitled to be present at the proceedings and that the juvenile court erred when it made jurisdictional and dispositional findings in his absence, and without an effort having been made to produce him.

An incarcerated parent has a statutory right to receive notice of a dependency proceeding and to be present at a hearing at which the juvenile court adjudicates the prisoner's child a dependent child of the court. (Pen. Code, § 2625, subds. (b) & (d); *In re Jesusa V.* (2004) 32 Cal.4th 588, 621–624 (*Jesusa V.*); and see Cal. Rules of Court, rule 5.530(f)(1).)[3] The notice must inform the incarcerated parent of his or her right to be physically present at the hearing and explain how the parent may secure his or her presence. (Rule 5.530(f)(1)(A).) It should be served by personal service or certified mail if the parent was not present at the initial petition hearing, and should also include a copy of the petition. (Welf. & Inst. Code, § 291, subds. (d)(7) & (e)(1).) If the prisoner wishes to be present, the juvenile court must order the prisoner's temporary removal from the institution and production before the court. (Pen. Code, § 2625, subd. (d); Rule 5.530(f)(2).) If the juvenile court fails to adhere to these rules, we reverse only if the error was prejudicial. (*Jesusa V.*, 32 Cal.4th at p. 624–625.)

It appears that some of these requirements were not met here. Father received notice of the April 29, 2015 hearing by regular mail, rather than certified mail or personal service, and the social worker sent him the petition by regular mail as well. There is no indication Father was informed of his right to be physically present at the hearing.

Despite these apparent irregularities, the record makes clear that Father did not suffer prejudice. Father contends he was deprived of the opportunity to contest the allegation that he was unable to provide for Minor's care and support. However, not only was Father incarcerated, but he has had only minimal involvement in Minor's life. His contribution could have had no effect on the juvenile court's resolution of the allegations

---

[3] All rule references are to the California Rules of Court.

at the heart of the dependency proceedings—that J.V. injured Minor through excessive discipline and Mother did not protect her. "[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent. [Citations.]" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Thus, "a juvenile court may take jurisdiction over a child even if only one of the child's parents is unsuitable." (*In re Janet T.* (2001) 93 Cal.App.4th 377, 392, fn. omitted.) There is no basis to conclude the juvenile court would not have assumed jurisdiction over Minor had Father been present.

Father also argues that he was deprived of the opportunity to seek an alternative placement for Minor, specifically, placement with his parents in Long Beach. On this record, we see no possibility of prejudice. Although Minor had a close relationship with Maternal Grandmother, spoke with her every other day, and had expressed a wish to live with her in Los Angeles, the Department concluded placement there would be inappropriate because it would interfere with Mother's reunification efforts. There is no likelihood that if Father had participated in the hearing, the juvenile court would have placed Minor with her *paternal* grandparents, who also lived in southern California, and with whom she had no regular contact. In the circumstances, any error was harmless.

### III.   DISPOSITION

The orders appealed from are affirmed.

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.