Filed 6/1/26  In re A.E. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.E., a Person Coming Under the Juvenile Court Law. | B347816 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.U.G., et al., Defendants and Appellants. | (Los Angeles County Super. Ct. No. 25CCJP01064) |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant C.U.G.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant W.E.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

_____

C.U.G. (Mother) and W.E. (Father) appeal from the juvenile court's jurisdictional and dispositional orders, contending the orders are unsupported by substantial evidence, the Los Angeles County Department of Children and Family Services (DCFS) conducted an inadequate inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and the California statutes implementing ICWA (Welf. & Inst. Code, § 224 et seq.),[1] and, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the juvenile court improperly exercised jurisdiction.  We affirm.

## BACKGROUND

The family is comprised of Mother, Father, their daughter A.E., born in August 2024, and E.U., A.E.'s older half-sibling. This appeal concerns only A.E.

### A.    Prior Dependency Proceedings Involving E.U.

In 2021, DCFS received a referral alleging Mother's drug and alcohol abuse and altercations with a male companion endangered E.U.  The referral was substantiated and mother participated in voluntary family maintenance services from

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2021 to 2022, which included substance abuse testing and a 12-step program. After another referral in 2023, the juvenile court sustained a section 300 petition alleging E.U. was at risk due to Mother's methamphetamine, marijuana, and alcohol abuse. The court declared E.U. a dependent of the court, removed him from Mother's custody, and ordered DCFS to provide reunification services. Mother failed to reunify with E.U., and the court terminated her parental rights on February 25, 2025.

### B. Current Proceedings

On February 13, 2025, Mother moved with six-month-old A.E. from Utah to California to enter an in-patient treatment program. Mother hoped evidence of her sobriety would support a section 388 petition for changed orders regarding E.U.

On February 25, 2025, DCFS received a referral regarding A.E., alleging general neglect by Mother.

Mother, age 26, had a substantial history of substance abuse that included relapses over the years after periods of sobriety. She admitted that she used marijuana and alcohol when A.E. was two months old and in her care, and the maternal grandfather detected the smell of alcohol on her when A.E. was four months old and in Mother's care. Mother admitted that on February 13, 2025, while traveling with A.E., she drank enough alcohol to feel "tipsy" before the flight from Utah to California, then after the flight had two beers in her hotel room. She also disclosed using marijuana on this date. Mother tested positive for marijuana four times from February to March 2025, but tested negative in April, June, and July 2025.

Mother was diagnosed with post-traumatic stress disorder (PTSD) in 2016 and depression and anxiety in 2020. She

reported that she previously participated in therapy but had a "bad experience" with it, and stopped taking a prescribed antidepressant because it did not help. She currently took medication to treat anxiety and reduce alcohol cravings.

Mother reported that before she was pregnant with A.E., Father hit her with an open hand on the side of her head and she threw a metal water bottle at him. In November 2023, Father grabbed her arms hard enough to leave finger marks. Mother reported that she hit Father in July 2023 and in April 2024, when she was pregnant with A.E. Mother said she was afraid of Father and did not know if incidents like this would occur after he was released from incarceration.

Mother told DCFS that she checked herself into the in-patient treatment program on February 14, 2025, and expected to remain in the program for 12 months, after which she planned to move to Recovery Bridge housing. She reported that although she wanted eventually to move out of state with A.E. and E.U., she transferred A.E.'s medical care from a provider in Utah to a provider in California and planned to remain in California for a while after she left Recovery Bridge housing.

Father had a long history of heroin and methamphetamine abuse and an extensive criminal history that included drug-related offenses. He had been incarcerated since May 2024, three months before A.E. was born, and reported not having used drugs while in prison. Mother reported that Father was a "terrible person" when he used drugs, and she did not believe he could maintain sobriety.

Father reported that he was drug free while incarcerated and participated in Alcoholics Anonymous. He expected to be

released from incarceration in July 2025 and hoped to be involved in A.E.'s life and support her and Mother.

A.E. was healthy, well-groomed, and developmentally on track, and Mother interacted with her in an appropriate, nurturing, and loving manner. Social workers expressed no concern regarding A.E.'s home life. Father interacted with A.E. only during prison visits.

On April 14, 2025, DCFS filed a section 300 petition alleging A.E. was endangered by Mother's and Father's history of physical altercations and substance abuse and Mother's mental health problems. The juvenile court detained A.E. from Father and maintained her in Mother's custody on the condition that Mother reside at her inpatient program and continue drug testing.

On July 21, 2015, the juvenile court amended and sustained DCFS's section 300 petition. The sustained petition alleged: (1) Mother and Father had a history of domestic violence, and Mother once struck Father while she was pregnant with A.E.; (2) Mother had a history of substance abuse and was a current abuser of marijuana and alcohol—on February 13, 2025, she was under the influence of alcohol while A.E. was in her care, and in March 2025 she tested positive for marijuana while A.E. was in her care; (3) Mother had been diagnosed with PTSD, bipolar depression, and anxiety, and failed to participate consistently in mental health treatment services or regularly take prescribed psychotropic medication; (4) Father had a history of substance abuse; and (5) E.U. was a current dependent of the juvenile court due to Mother's substance abuse. The sustained petition alleged that these circumstances rendered Mother and

Father incapable of caring for A.E. and put her at substantial risk of serious physical harm.

The juvenile court declared A.E. to be a dependent of the court pursuant to section 300, subdivision (b), removed her from Father's custody and maintained her in Mother's custody, ordered family preservation services for Mother and monitored visits for Father, and ordered both parents to participate in a full drug program that included random, on-demand testing.

The parents appealed.

### C.     Facts Pertaining to ICWA

Mother and both of her parents denied any Native American ancestry but Father and his relatives reported possible membership in several tribes.  DCFS investigated Father's ancestry and contacted several Native American communities. The Shakopee Mdewakanton Sioux Community, Standing Rock Sioux tribe, Upper Sioux Community tribe, Crow Creek Sioux tribe, Rosebud Sioux tribe, and Lower Sioux tribe all reported that A.E. was neither a member of nor eligible for membership in their communities.  The court found no reason to believe ICWA applied to A.E.

### DISCUSSION

The parents contend the juvenile court's jurisdictional findings and dispositional orders are unsupported by substantial evidence.  Father raises further challenges, which Mother joins, concerning the juvenile court's jurisdiction under the UCCJEA and its ICWA findings.

6

### A. Evidence Supporting Jurisdiction and Disposition

Subdivision (b) of section 300 authorizes the juvenile court to exercise jurisdiction over a child when, among other circumstances, there is a substantial risk that the child will suffer serious physical harm or illness as a result of the failure or inability of a parent to adequately supervise or protect the child. (§ 300, subd. (b)(1)(A).)  The court may exercise jurisdiction pursuant to this provision only upon a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future.  (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004.)  Prior acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. (*Ibid.*)

We review a juvenile court's jurisdictional findings and orders for substantial evidence.  (*In re E.B.* (2010) 184 Cal.App.4th 568, 574–575.)

### 1. *Domestic Violence*

Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b)(1), but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at substantial risk of serious physical harm. (*In re Janet T.* (2001) 93 Cal.App.4th 377, 391.)

Here, the evidence showed that Mother and Father engaged in domestic violence prior to A.E.'s birth, and Mother reported she was afraid of Father and did not know if the violence would reoccur after he was released from incarceration. The evidence thus showed that the parents' relationship was

7

violent, and it was within the court's discretion as the assessor of "issues of fact and credibility" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193) to conclude that the violence would likely reoccur when Father was released and would pose a substantial risk to A.E. of serious physical harm.

Whether the parents would definitively remain a couple is not determinative. Father wanted to remain a couple, and the parents would be linked through A.E. regardless of the status of their relationship. The most recent evidence before Father was imprisoned supports that the parents' would continue the domestic violence. (See *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["[a] parent's past conduct is a good predictor of future behavior"].)

### 2.     *Substance Abuse*

Although a parent's substance abuse, without more, does not bring a minor within the jurisdiction of the dependency court, there is more here. Mother admitted using marijuana and alcohol on two occasions when A.E. was in her sole care, and the maternal grandfather detected the smell of alcohol on her when A.E. was four months old and in Mother's sole care. The evidence supports that despite her history of substance abuse that caused her to lose parental rights to E.U., Mother was still willing to use drugs and alcohol while the sole caregiver of a very young child.

Mother's sobriety is fragile, and longstanding and chronic substance abuse is a serious problem that cannot be ameliorated in a few months. Although we cautiously laud and encourage her progress, the possibility of relapse is real. We conclude that the evidence supports that Mother's history of substance abuse and potential for relapse endangers A.E.

8

Father argues that the order that he participate in a full drug program, including random, on-demand testing, was not narrowly tailored to his circumstances because he already participated in Alcoholics Anonymous and no evidence suggested he used any drugs while incarcerated. He acknowledges the court's broad discretion in fashioning disposition orders in the best interest of A.E. but contends the court should have ordered only drug testing for him, and should have ordered a complete substance abuse program only if any test was missed or positive. Although the evidence would support that order, it also supports the court's choice in requiring a more comprehensive approach.

"[T]he juvenile court's discretion in fashioning reunification orders is not unfettered. Its orders must be 'reasonable' and 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' " (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229, quoting § 362, subd. (c).) The court-ordered reunification plan " ' "must be appropriate for each family and be based on the unique facts relating to that family." ' " (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) To that end, when a court is aware of other parental issues that were not the basis for jurisdiction but that would "impede the parent's ability to reunify with his child, the court may address them in the reunification plan." (*Id.* at p. 1008; see *ibid.* [juvenile court "reasonably concluded appellant's substance abuse was an obstacle to reunification that had to be addressed in the reunification plan"]; see also *In re D.M.* (2015) 242 Cal.App.4th 634, 639 ["a dispositional order may reach both parents, including a nonoffending parent"].)

Here, the evidence supported orders requiring Father to attend drug counseling. His long history of substance abuse

9

demonstrates that he was unable to maintain sobriety in the past. That he has done so while incarcerated is a worthy achievement, but that conduct is a weak indicator of conduct after release, particularly for an individual who has a long history of substance abuse. Under these circumstances, the court did not abuse its discretion by concluding a drug program for Father was in A.E.'s best interests and would reasonably assist in Father's ability to reunify with her.

### B.    ICWA

The parents contend the juvenile court erroneously found that ICWA does not apply to A.E. We disagree.

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the *removal of Indian children from their families* and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128–1129, italics added.) "ICWA does not apply to a proceeding to place an Indian child with a parent." (*In re J.B.* (2009) 178 Cal.App.4th 751, 758, italics omitted.)

Here, the juvenile court retained A.E. with Mother. The court therefore correctly concluded that ICWA does not apply. We express no opinion on the adequacy of DCFS's ICWA inquiry.

### C.    UCCJEA

The parents contend that because California was not the child's home state, the juvenile court improperly exercised jurisdiction in violation of the UCCJEA. We disagree.

The UCCJEA "is the exclusive method of determining the proper forum in custody disputes involving other jurisdictions and governs juvenile dependency proceedings." (*In re C.T.* (2002) 100 Cal.App.4th 101, 106.)

The UCCJEA's method for determining a proper forum begins with the concept of a "home state." " 'Home state' means the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." (Fam. Code, § 3402, subd. (g).) If a child has a home state, the UCCJEA requires certain coordination with that state. But when a child has no home state, any state in which the child is present may assert jurisdiction without such coordination. (Fam. Code, § 3421, subds. (a)(2) & (a)(4).)

Mother and A.E. lived in Utah for six months before moving to California on February 13, 2025. These dependency proceedings commenced 12 days later, on February 25, 2025. A.E., therefore resided in no one state for at least six consecutive months immediately before commencement of these dependency proceedings. Because A.E. had no home state, the UCCJEA was not a bar to a California court exercising jurisdiction over her.

### D.    Conclusion

Because substantial evidence supports that the parents' history of domestic violence and Mother's substance abuse posed a substantial risk of serious physical harm to A.E., we will affirm the juvenile court's jurisdictional findings on these grounds and its order that Father participate in a drug program. Given this result, we need not consider Mother's argument that a parent's mental illness does not by itself support jurisdiction.

11

## DISPOSITION

The juvenile court's orders are affirmed.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.