Filed 11/10/25  In re S.B. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>               v.<br><br>L.A.,<br><br>     Defendant and Appellant. | G065512<br><br>(Super. Ct. No. 22DP0368A)<br><br>O P I N I O N |

　　　　　Appeal from a judgment of the Superior Court of Orange County, Robert Goodkin, Judge. Affirmed in part, reversed in part, and remanded.

　　　　　Donna Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　Leon J. Page, County Counsel, and Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

　　　　　No appearance for the Minor.

　　　　　　　　　*　　　　　*　　　　　*

This is an appeal by Mother from orders made at a combined jurisdiction/disposition hearing in a juvenile dependency matter. Mother contends there was insufficient evidence to support exercising jurisdiction over Minor. She further contends that, assuming jurisdiction was properly exercised, it was error to remove Minor from her custody yet maintain custody with Father.

We agree in part. We conclude substantial evidence supports the court's exercise of jurisdiction. In particular, the domestic violence between the parents posed a substantial risk of harm to Minor. However, we agree with Mother that it was error to remove Minor from her custody. The same condition that rendered custody safe for Father—that Mother not be present with him and Minor—would have rendered custody safe for Mother. Accordingly, we will reverse the disposition order removing custody from Mother.

## FACTS

Minor tested positive for THC at her birth in 2022 and, due to resulting complications, had to spend time in the natal intensive care unit. During the pregnancy, Mother had posted online videos depicting her smoking marijuana and cigarettes during pregnancy and laughing off the potential health consequences to the unborn child. Mother and Father had also posted videos depicting domestic violence between the two, including Father hitting Mother with an object that made her nose bleed. This resulted in a first dependency proceeding, which was ultimately resolved in July 2024 with both parents reunifying with minor.

The present dependency proceeding began with a protective custody warrant issued on January 31, 2025, due to allegations that the parents were engaged in loud verbal arguments, including yelling and screaming, in front of minor. These arguments sometimes included Mother pushing, pulling or hitting Father. Recent livestreams by Mother depicted some of these altercations. It was further alleged that mother's mental health was unstable as a result of being inconsistent with her mental health treatment and medications. During an interview with a social worker, Mother would alternate between laughing, to crying inconsolably, to screaming. Father had disclosed a relapse in his use of alcohol and marijuana. He also had left Minor in Mother's care on several occasions for several days.

That said, their home was organized, well stocked, and free of any safety hazards. Minor appeared happy, healthy, and well cared for.

On February 4, 2025, SSA filed a juvenile dependency petition, alleging Minor came within the jurisdiction of the court pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) (inadequate supervision and mental illness/substance abuse) and (j) (siblings neglected and risk of current neglect to Minor). The subdivision (j) allegations arose from dependency proceedings in Oregon in 2017 and Texas in 2020 in which Mother failed to reunify with Minor's half-siblings, and they were adopted. In those proceedings, Mother was found to have untreated mental health issues, including psychosis, major depressive disorder, general anxiety, suicidal ideations, schizophrenia, and bipolar disorder.

At an initial hearing on February 5, 2025, the court found it would be a substantial danger to Minor to remain in Mother's custody. However, it released Minor to Father's custody under a protective order that,

3

in relevant part, prohibited Mother from residing at the home, prohibited Father from supervising Mother's visitation, prohibited either party from posting videos about the proceeding, prohibited Father from consuming alcohol or drugs, and required Father to engage in drug testing. Mother was given 10 hours of supervised visitation per week.

On March 7, 2025, Minor was removed from Father for failure to follow the protective custody orders. Father tested positive for marijuana with levels increasing between tests. Father denied marijuana use since Minor was returned to his care.

On March 10, 2025, Mother was arrested for having bruised Father while he drove her to a visit, and for later going to Father's residence and refusing to leave.

On March 13, 2025, the court ordered that Minor be returned to Father's custody, and it issued a protective order protecting Father and Minor from Mother, ordering her to stay away and avoid contact, other than peaceful contact to communicate about court-ordered contact or visits. However, that protective order was apparently never served on Mother.

Mother consistently visited Minor, with no major concerns noted. Mother brought healthy snacks for Minor and played affectionately. According to one supervisor, Mother was "able to provide basic needs for the child . . . and provide appropriate supervision." "[M]other is able to comfort the child when she is upset." The supervisors "offered positive feedback about specific strong interactions that Mother shared with her child . . . ."

At the jurisdictional hearing, Mother was the only witness to testify. With regard to mental health issues, she acknowledged that she had previously experienced a traumatic brain injury from being assaulted in the head. She testified that she sees a psychiatrist monthly, though she was only

4

prescribed an anti-depressant at the time. She denied ever being diagnosed with major depressive disorder, schizophrenia, or bipolar disorder.

At the conclusion of the hearing, the court granted the petition, but only after striking significant portions of it. What remained afterward was a sustained allegation that the parents have an unresolved problem with domestic violence. The court also sustained a paragraph describing Mother's mental health challenges, but qualified its finding, stating, "for mental health reasons alone, the Court would not take jurisdiction or sustain any findings. And the Court appreciates that the mother has continued to keep in touch with her doctor and keep appointments with her doctor. And this Court thinks that that is helping her with her case and it's helping her to try to reunite with her child as soon as possible. [¶] [However], [i]t does appear that the chaotic relationship with the father does really combine with some of the mother's mental health issues to provide and create an unsafe environment for the child." The court struck any allegations regarding substance abuse, stating, "there's no evidence at this time that the mother's unresolved substance abuse issues are having a negative effect on the child or putting the child in danger."

With regard to the disposition, the court vested custody of Minor with Father and adopted SSA's recommendation that Mother receive 10 hours of supervised visitation per week. Mother appealed.

DISCUSSION

Mother contends the court erred in three ways. First, she contends there was no substantial evidence to support exercising jurisdiction at all. Second, she contends it was an abuse of discretion to remove Minor from her custody. Third, she contends it was error to permit only supervised visitation, as opposed to unsupervised visitation. We conclude there was

sufficient evidence for the court to exercise jurisdiction, but we agree with Mother that the evidence did not support removing Minor from her custody. Because we agree with her on the custody issue, we do not reach the visitation issue.

## I.

### JURISDICTION WAS PROPERLY EXERCISED

Welfare and Institutions Code section 300, subdivision (b)(1), permits the court to exercise jurisdiction under the following circumstances: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of any of the following: (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. . . . . (D) The inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." At the jurisdictional hearing, the burden is on SSA to establish jurisdiction by a preponderance of the evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the trial court's findings for substantial evidence. (*Ibid.*) If even one of the court's jurisdictional findings is supported, we affirm the exercise of jurisdiction. (*Ibid.*)

The trial court's view was that jurisdiction was primarily warranted by the domestic violence incidents. We share that view and find ample evidence in the record to support it. This case was initiated due to multiple verbal arguments characterized by yelling and screaming. The parents admitted that these arguments became somewhat physical, primarily pushing and pulling. They denied that Minor was ever present for the physical altercations but acknowledged she was present for the yelling and screaming. These incidents must be viewed in the historical context of the

6

parents previously engaging in domestic violence and exhibiting poor anger management.

These concerns were punctuated by the arrest of Mother *after* the initiation of these proceedings, in which she bruised Father when they were driving in a car together. She was later arrested and a protective order issued against her (though it was, apparently, never served on her).

While there was no evidence that Minor was present at the incidents of physical violence, a court need not wait until disaster strikes in order to exercise jurisdiction, but instead may do so when there is a substantial risk of physical harm. (*In re I.J., supra,* 56 Cal.4th at p. 773.) The court could reasonably conclude that the incidents of physical domestic violence created such a risk.

II.

THE COURT ERRED IN REMOVING CUSTODY FROM MOTHER

Disposition findings for removal of a child from the home must be made by clear and convincing evidence. (§ 361, subd. (c).) Removal is only permitted if one of the conditions set forth in section 361, subdivision (c), is satisfied. The only relevant condition here is subdivision (c)(1): "There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." We review the court's disposition order for substantial evidence, though we do so mindful of the heightened burden of

proof of clear and convincing evidence. (*In re M.D.* (2023) 93 Cal.App.5th 836, 857.)

The trial court's disposition order maintained custody of Minor with Father on the condition that Father and Mother not be present together with Minor. The implicit premise being: this case is driven by domestic violence, and so long as Father and Mother are separated, there is insufficient risk to Minor to warrant removal. But absent clear and convincing evidence to the contrary, that logic would seem to apply equally to Mother: so long as she was not exercising her custody of Minor in the presence of Father, there is insufficient risk of harm to warrant removal from her custody.

SSA contends that the evidence to the contrary was Mother's mental health issues. SSA highlights that Mother had been seen exhibiting emotional volatility, swinging from laughing, to cooperation, to crying in short order. This was reported by the social worker when interviewing Mother about the petition, and Father made a similar claim. SSA also notes that, according to past sustained petitions, Mother had previously been diagnosed with schizophrenia and bipolar disorder, though Mother denied receiving those diagnoses, and Mother's current psychiatrist had only prescribed medication for depression. SSA observes that Mother was not consistent in taking her depression medication.

There is, at the outset, a significant problem with SSA's argument: the trial court did not adopt it. In its ruling on jurisdiction, the trial court concluded that Mother's mental health issues, whatever they are, were not sufficient, by themselves, to demonstrate a significant risk of harm to Minor even under the relatively lighter preponderance of the evidence standard. A fortiori, the court found the same evidence failed under the more

8

demanding standard of clear and convincing evidence. We cannot review for substantial evidence a finding that the trial court did not make.

The question, therefore, is whether the evidence compelled a finding that Mother's mental health rendered custody of Minor unsafe. We conclude it did not. In reaching this conclusion, we begin with the following principle: "Harm to the child cannot be presumed from the mere fact of mental illness of the parent . . . ." (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 540.) A parent's mental illness does not "necessarily [cause] detrimental" effects to the well-being of their child. (*Id.* at p. 541.) "There are innumerable eccentric parents whose behavior on certain occasions may be less then socially acceptable and yet they are loving and compassionate parents." (*Ibid.*) To meet its burden, SSA must present concrete facts showing how Mother's mental health "created a substantial risk" of serious physical injury or illness to the child. (*In re Janet T.* (2001) 93 Cal.App.4th 377, 388-389.)

Here, the evidence of Mother's *current* mental health issues was slim. It was primarily based on anecdotal evidence of emotional volatility (in the context of arguments with Father, or in the context of SSA forcibly taking her child away from her), a few odd statements, and past diagnoses.[1] The anecdotes and odd statements simply are not enough to carry the burden of

---

[1] The primary example of an odd statement was a text Mother sent to the social worker, stating, "'oh if you saw a message saying I killed someone before, my mom's boyfriend molested me and he was stalking me and they found his dead in a[n] alley after.'" There is nothing in the record to further elucidate the events this text refers to. Another example SSA points to is a statement Mother made in which she expressed a desire to undergo hypnotherapy for both herself and Minor. Again, there is nothing in the record to further develop what Mother intended, nor any danger that would be posed by hypnotherapy.

9

showing by clear and convincing evidence that she poses a danger to her child. And her past diagnoses are in the past—there was no evidence that she *currently* suffers from anything more than depression. (See *In re Janet T., supra,* 93 Cal.App.4th at p. 388 (evidence of past events only relevant if they demonstrate a current danger).) Moreover, there was no evidence that her depression was having any impact on Minor, even if Mother was inconsistent in taking her medication. To the contrary, aside from the domestic violence, her home was safe and well stocked, and Minor was happy and in good health.

Quite simply, this is a domestic violence case. Take the domestic violence out of the equation, and there are no valid grounds for removing custody. The court was able to take the domestic violence out of the equation by imposing conditions on Father's custody that he not be present with Mother and Minor. This was appropriate because section 361, subdivision (c)(1), permits removal of custody only where "there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." The same condition that protected Minor in Father's custody would have protected Minor in Mother's custody—i.e., prohibit Father's presence when Mother and Minor are together. Accordingly, it was error to remove custody from Mother.

In considering our instructions on remand, we are mindful that this case did not pause over the months that this appeal was pending. Although we have concluded that circumstances as of the first disposition hearing did not warrant removing custody from Mother, those circumstances may have changed. Thus, on remand, the court should hold a new disposition hearing and restore custody to Mother *unless* changed circumstances or new evidence support removal.

10

## DISPOSITION

The order of April 29, 2025, removing custody from Mother is reversed. On remand, the court shall conduct a new disposition hearing consistent with this opinion. In all other respects, the judgment is affirmed.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J


MOORE, J.

11